```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                        DISTRICT OF VERMONT

JAMES MAYHEW,                       :
                                    :
          Plaintiff,                :
                                    :     Case no. 2:11-cv-190
     v.                             :
                                    :
ALTERRA EXCESS AND SURPLUS          :
INSURANCE COMPANY (f/k/a Max        :
Specialty Insurance Company)        :
                                    :
                                    :
          Defendant.                :
```

## Memorandum Opinion and Order: Cross Motions for Summary Judgment

In this dispute over insurance coverage, Plaintiff James Mayhew ("Mayhew") and Defendant Alterra Excess and Surplus Insurance Company ("Alterra") have cross-moved for summary judgment.  At issue is whether Alterra must provide Uninsured/Underinsured Motorist ("UM/UIM") coverage to Mayhew as president of Mayhew Enterprises, Inc., under a policy issued to the corporation for injuries Mayhew sustained in an auto accident.  For the reasons stated below, the Court holds that Mayhew is not a covered individual under the issued insurance policy.  Additionally, because the Vermont Uninsured/Underinsured Motorist Statute, Vt. Stat. Ann. tit. 23, § 941, only applies to those insured under the policy in question, Alterra is not required to provide UM/UIM coverage to

Mayhew.  Alterra's motion for summary judgment is **GRANTED;** Mayhew's motion for summary judgment is **DENIED.**

### I.   Factual Background

The material facts are not in dispute.  Mayhew is a resident of Richford, Vermont, and the president and employee of Mayhew Enterprises, Inc.  Alterra, formerly known as Max Specialty Insurance ("Max"), is an insurance company with its principal place of business in Richmond, Virginia.  Compl. 1, ECF No. 1-1 at 3.

Mayhew was riding his personal motorcycle when he was hit by a vehicle operated by Daniel Garant.  Mayhew was injured as a result of this accident, and incurred medical expenses and lost wages.  Compl. 1-2.

At the time of the accident, Mayhew Enterprises, Inc. was covered by a commercial general liability insurance policy ("CGL") through Max for the time period spanning from November 27, 2009 to November 27, 2010.  CGL, ECF No. 21-3 at 1. Pertinent to this case, the policy included a "Hired and Non-Owned Auto Liability Endorsement" ("Endorsement").  Endorsement 1, ECF No. 21-3 at 6.  The Endorsement afforded coverage for bodily injury and property damage liability for incidents arising out of the use of a "hired auto" or "non-owned auto"

during the course of business.[1]  Endorsement 3, ECF No. 21-3, 8.

It also defined who is an insured and who is not for the

purposes of this Endorsement:

> a. Each of the following is an insured under this insurance to
>    the extent set forth below:
>       1. You
>       2. Any other person using a hired auto with your
>          permission
>       3. With respect to a "non-owned auto", any partner or
>          "executive officer"[2] of yours, but only while such
>          "non-owned auto" is being used in your business . . ..
>
> b. None of the following is an insured:
>       1. Any person engaged in the business of his or her
>          employer with respect to "bodily injury" to any co-
>          employee of such person injured in the course of
>          employment;
>       2. Any partner or "executive officer" with respect to
>          any auto owned by such partner or officer or a member
>          of his household; . . . .

Endorsement 2, ECF No. 21-3 at 7.  The Endorsement made no

mention of UM/UIM coverage at any point.  The Insuring Agreement

for the CGL policy was as follows:

---

[1] The endorsement defines "hired auto" as "any "auto" you lease, hire, rent or borrow.  This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", your partner or your "executive officers", or members of their households." Endorsement 3, ECF No. 21-3 at 8.  The endorsement defines "non-owned auto" as any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business.  This includes "autos" owned by your "employees", your partners or your "executive officers", or members of their households, but only while used in your business or your personal affairs.  Endorsement 3, ECF No. 21-3 at 8.

[2] "Executive Officer" is defined by the CGL as "a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document." CGL Coverage Form 12, ECF No. 21-3 at 24.

3

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

CGL Coverage Form 1, ECF No. 21-3 at 13.

On July 23, 2010, Mayhew sought UM/UIM coverage for his accident through Mayhew Enterprise Inc.'s policy.  Compl. 2.  On November 15, 2010, Max denied Mayhew coverage.

## II. Discussion

A. *Legal Standard*

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to relief as a matter of law.  Fed. R. Civ. P. 56(a); <u>Celotrex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  "[W]hen parties have filed cross-motions for summary judgment, the court 'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'"  <u>Bronx Household of Faith v. Board of Educ. of the City of New York</u>, 492 F.3d 89, 96-97 (2d. Cir. 2007) (quoting <u>Hotel Employees & Rest. Employees Union, Local 100 v. City of New York Dep't of Parks & Recreation</u>, 311 F.3d 534, 543 (2d Cir. 2002)).  Jurisdiction over this matter is based on diversity, 28 U.S.C. §

1332(a)(1).  The Court applies Vermont law to the substantive issues.  *See* Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

  B. *Ambiguity of Definition of Insured*

"[T]he meaning of particular language found in insurance policies should be examined 'in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes.'"  Newmont Mines Ltd. v. Hanover Ins. Co., 784 F.2d 127, 135 (2d Cir. 1986) (quoting Champion Int'l Corp. v. Cont'l Cas. Co., 546 F.2d 502, 505 (2d Cir. 1976)).  Under Vermont law, the Court interprets insurance contracts according to their terms and the intent of the parties as expressed by the language of the policy.  City of Burlington v. Nat'l Union Fire Ins. Co., 655 A.2d 719, 721 (1994).  "Disputed terms are to be read according to their plain, ordinary, and popular meaning."  Id.  "[I]t is a fundamental rule that a policy of insurance must be construed liberally in respect to the person insured and strictly with respect to the insurer."  Dusharm v. Nationwide Ins. Co., 92 F. Supp. 2d 353, 356 (D. Vt. 2000) (quoting Valente v. Commercial Ins. Co., 236 A.2d 241, 243 (Vt. 1967)).  However, the Court must "not deny the insurer the benefit of unambiguous terms inserted into the contract for its benefit."  Concord Gen. Mut. Ins. Co. v. Madore, 2005 VT 70, ¶ 9, 882 A.2d 1152, 1155 (citing

5

Fireman's Fund Ins. Co. v. CNA Ins. Co., 2004 VT 93, ¶ 9, 862 A.2d 251, 256.)

At the outset, in looking at the "business purposes sought to be achieved by the parties", the CGL issued to Mayhew Enterprises, Inc. was a business policy intended to protect the corporation, and there is no suggestion the policy was intended to protect an executive officer operating a personal vehicle. Newmont Mines, 784 F.2d at 135 (quoting Champion Int'l Corp., 546 F.2d at 505). However, Mayhew argues that the definition of insured under the Endorsement is ambiguous, and thus under Vermont law must be construed in his favor. In support of his argument that the definition of "insured" is ambiguous, Mayhew relies on Lunge v. National Casualty Company, 977 F. Supp. 672 (D. Vt. 1997).  In Lunge, this Court found ambiguity in the definition of insured, precluding its application solely to a corporation, when the policy defined "insured" as "you, or if you are an individual, any family member."  977 F. Supp. at 677. Mayhew argues by analogy that the policy terms in his case are ambiguous, as the reference to "bodily injury" in the endorsement added to the ambiguity of the term because "bodily injury is of course, something that a corporation cannot suffer."  Lunge, 977 F. Supp. at 676, n. 3; (citing Hansen v. Ohio Cas. Ins. Co., 687 A.2d 1262, 1266 (1996)).

6

Alterra concedes that corporations cannot suffer bodily injury, but points out that they can be held liable for damages for bodily injury.  In support of their argument, Alterra cites Chickey v. Watts in asserting that "the basis for finding ambiguity in the designation of a corporate "you" as an insured does not exist in the context of liability coverage."  Nos. 04AP-818, 04AP-1269, 2005 WL 2303745, at *16 (Ohio Ct. App. Sept. 22, 2005).

The critical difference between Lunge and the case at hand is the language defining insured as "if you are an individual, any family member."  Lunge, 977 F. Supp. at 676.  In the cases cited by Mayhew that use this definition, the qualifying phrase "if you are an individual" makes the definition ambiguous.  Here, Mayhew Enterprises, Inc.'s policy did not include that phrase.  The CGL policy was issued solely to Mayhew Enterprises, Inc., and the corporation was the named insured.  CGL Coverage Part Declarations, ECF No. 21-3 at 4.  As the president of Mayhew Enterprises, Inc., Mayhew was an executive officer as defined in CGL Coverage Form.  CGL Coverage Form 12, ECF No. 21-3 at 24.

The Mayhew Enterprises, Inc. policy not only stated "you" as the named insured, but also specified that the policy excluded "any partner or executive officer with respect to any auto owned by such partner or officer or a member of her

household." Endorsement 2, ECF No. 21-3 at 7. This exclusion, which eliminates coverage not only for family members of executives using private vehicles, but also the executive officers themselves, is further evidence that the definition of insured in the present policy unambiguously excludes executive officers who are using their own vehicles not on company business.

The definition of an insured provided in the policy is unambiguous. Based upon the plain meaning of the definition of an insured in the Endorsement, Mayhew is excluded from coverage under part a(3) and part b(2) of the definition, as he was an executive officer riding his motorcycle, a personally owned vehicle, not in the course of business. Endorsement 2, ECF No. 21-3 at 7.

C. *Application of Vt. Stat. Ann. tit. 23, § 941*

All Vermont automobile insurance policies are required to include UM/UIM coverage.  Vt. Stat. Ann. tit. 23, § 941. Pursuant to the statute,

> No policy insuring against liability arising out of the ownership, maintenance, or use of any motor vehicle may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein, or supplemental thereto, for the protection of persons insured thereunder who are legally entitled to recover damages, from owners or operators of uninsured, underinsured, or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, and for property damages

      resulting from ownership, maintenance, or use of such
      uninsured, underinsured or hit-and-run motor vehicle.

Vt. Stat. Ann. tit. 23, § 941(a).

    The purpose of UM/UIM insurance is to "permit 'the insured injured person the same recovery which would have been available to him had the tortfeasor been insured to the same extent as the injured party.'" Monteith v. Jefferson Ins. Co. of N.Y., 618 A.2d 488, 492 (Vt. 1992) (quoting Connolly v. Royal Globe Ins. Co., 455 A.2d 932, 935 (Me. 1983)).  UM/UIM coverage attaches to the insured parties, not an insured vehicle.  Monteith, 618 A.2d at 490.  However, while UM/UIM is statutorily mandated and insurance provisions cannot reduce or eliminate UM/UIM coverage, "those protections extend only to those insured under the policy.  The statute was not enacted to provide coverage for everyone contained in the policy, and limiting coverage to passengers falling within the policy's definition of 'insured' is not barred by the statute."  Norman v. King, 659 A.2d 1123, 1125 (1995).  Thus, if a "plaintiff cannot show that she meets any of the definitions of 'an insured' under the UIM section of the policy . . . by its terms the policy excludes plaintiff from UIM coverage."  Canedy v. Liberty Mutual Ins. Co., 126 F.3d 100, 104 (2d Cir. 1997) (construing Vt. law).

Because Mayhew is not an insured under the Endorsement, Vt. Stat. Ann. tit. 23, § 941 does not compel Alterra to provide UM/UIM coverage to him under the CGL.

For the above reasons, Defendant's motion for summary judgment is **GRANTED;** Plaintiff's motion for summary judgment is **DENIED.**

Dated at Burlington, in the District of Vermont, this 25th day of January, 2012.

                                        /s/William K. Sessions III\_\_\_\_\_
                                        William K. Sessions III
                                        U.S. District Court Judge